## Marie Haupt by John D. Casey, Guardian, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 20,931.

APPEAL AND ERROR, § 1514*—*when improper argument of counsel reversible error.* Where, in an action by a five-year-old girl against a street railway company for damages for personal injuries, necessitating the amputation of a leg, counsel for plaintiff in his argument gave his individual opinion as to the amount of damages stated that the verdict should be for an amount sufficient to support plaintiff for the rest of her life, made reference to her humble circumstances, alluded to her going down "into the valley of the shadow of death" while under the anesthetic, discussed her mental pain and spoiled matrimonial prospects, and when objection was made by defendant's counsel, repeatedly continued his argument without giving opportunity for a prompt ruling, and without rebuke by the court, and remarked that defendant's counsel was trying "to break up his argument," that he "expected it" and called the jury's attention to the fact that he was being "interrupted and bully-ragged every minute," and withdrew improper statements repeatedly "to save time," without a ruling by the court, *held* that the judgment should be reversed.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Haupt v. Chicago City Railway Co., 197 Ill. App. 400.

Appeal from the Superior Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded. Opinion filed January 11, 1916.

**Statement by the Court.** This is a suit brought by appellee, a minor aged five years at the time of the accident and eight at the time of the trial, to recover damages for loss of a foot, the amputation of which was necessitated by being run over by one of appellant's cars. The verdict and judgment were for $12,000. The following are excerpts from the record of the proceedings during the course of argument to the jury by plaintiff's attorney:

Mr. R.   "* * * The time will come, and is not very far distant, when she will realize, when she will know the pain of mind that comes from realizing that you are a cripple.

Mr. H.   I object to that argument.

Mr. R.   That you must go all your life in that condition.

Mr. H.   Wait a minute, I object to that argument.

Mr. R.   I do not want to waste my time, I will go on to something else.

Mr. H.   I object to this argument by counsel.

Mr. R.   My time is limited.

Mr. H.   I do not think that is any element that ought to be argued, realization that she is to be a cripple.

Mr. R.   Pain of mind I understand to be an element. I do not want to have this time taken up unduly, but I think that is a fair subject to argue to the jury, and the law says so, too.

Mr. H.   I object to it.

The Court.   All right, go on, Mr. Rathbone."

(Exception to ruling and remarks.)

Mr. R.   "Who is going to marry a cripple with her foot off? Now the only hope for her is to go out and do something. What is she fitted for?"

(Objection sustained. Exception to remarks.)

Mr. R.   "If there is any question about it, gentle-

men, I withdraw it. Now here—you know just what the future before that child is—what is the use of our beating around the bush—you know perfectly well what she has got to do. If she is to be anything, or do anything, she has got to go out and earn a living, or attempt to do so; unless this jury does what we consider the fair and right thing. Now here. What ought to be a sufficient sum to maintain that child? What is she really damaged? * * * Yes, I know your game. I didn't interrupt you. I know you are taking all my time you can, and trying to break me up before this jury. I know it, and I expected it. * * * The pain she suffered there at that time, the pain she underwent when she went down under the anesthetic into the valley of the shadow of death—

Mr. H. I object to that.

Mr. R. When she came out—

Mr. H. I object, wait a minute.

Mr. R. I withdraw it. I am not going to have my time taken up. I have only got a few minutes more.

Mr. H. I object, your Honor.

Mr. R. I withdraw it to save time—anything to get the time that you have taken.

Mr. H. Will you wait a minute?

Mr. R. No.

Mr. H. I object to that statement of counsel, and in spite of the withdrawal, I wish to preserve an exception to the making of the remark. You cannot stick a knife in and then pull it out and not leave a hole." (Exception entered.) * * *

Mr. R. ''What would be a fair compensation for this girl? What ought to keep her through her life? I say to you she can not have an investment at a much safer percentage than five per cent. What would that bring her? Would you ask this girl, in her condition, to live on less than $1,000 a year? Don't you think that would be fair and right? When everything now, and everything that she has got to meet and take care of is taken into consideration? Do you mean to say that would be too much? Now, gentlemen of the jury, consider it well. What would that be? At five per cent. that would be—

Mr. H.   That is objected to.

Mr. R.   $20,000.

Mr. H.   Wait a minute, I object to that.

Mr. R.   Is that too much?

Mr. H.   I object to the argument, if your Honor please, that there is anything in the law that allows any damages based on a percentage derived from a principal, for the reason that the principal never comes back to the other party.   It is not—

Mr. R.   Oh, now—

Mr. H.   Wait a minute.

Mr. R.   Yes.

Mr. H.   It is a wrong argument.   It has no foundation in law, and it should not be made.   He cannot argue here that there is some principal from which an income is to be derived.   I object to it.

The Court.   The objection is sustained.''   (Exception to remarks.)

Mr. R.   ''Of course I know now, gentlemen, what is a fair compensation for this girl, what she ought to have.   I have pondered this thing well.   I will give you my opinion for what I think it is worth—what would be sustained in this court or any other court, and be fair and square.   Taking into consideration all the pain of body and mind that she has suffered, the money loss that she would have; all the pleasures she will be deprived of.   Gentlemen of the jury, what does it mean?  Is $20,000 too much?   I say that it is not when everything is considered.   Would you ask her or any human being to live on less than that or to get along?   Do not turn her away now, even if she is in humble circumstances.   Do not scale that down or make it too small.

Mr. H.   I object to that.

Mr. R.   Now gentlemen, I know—

Mr. H.   Wait a minute.

Mr. R.   I know you will try to break me up.

Mr. H.   I know when I make an objection, it is usual and customary among lawyers to stop until the objection can be passed upon.

Mr. R.   Yes.

Mr. H.  I object to the statement that 'she is in humble circumstances.'

Mr. R.  Well, I will cast that out.

The Court.  The objection is overruled.'' (Exception to ruling and remark.)

Mr. R.  Yes, I know, take it out.  I will withdraw that, or anything to get along and present this case in a connected way to this jury.

Mr. H.  Yes.

Mr. R.  You know no lawyer can speak to any advantage when he is being interrupted and bully-ragged every minute.  I .didn't do it to him.  But, gentlemen of the jury you know the truth and justice of this case. I have told you what she ought to have in my opinion. I stake my opinion and reputation upon it that it is not too much, unfair or unreasonable.

Mr. H.  I object to that, I object to that.

Mr. R.  I believe that is just.

Mr. H.  I object to that, ''I stake my opinion and reputation on that.''

The Court.  ''The objection is sustained.'' (Exception to the remark.)

Mr. R.  ''Gentlemen, I see that I cannot make much of a talk here to-day, but I don't care what it is, you can judge between us both.  *  *  *  I have told you what I believe this amount ought to be and I ask you to give it.  I ask you to give that amount as a fair, square compensation; I ask you with all earnestness, gentlemen:  Do justice to this little girl, do justice to her and as long as you live you will never have cause to regret it.''

FRANKLIN B. HUSSEY and CHARLES LEROY BROWN, for appellant; JOHN R. GUILLIAMS, of counsel.

HENRY R. RATHBONE, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

The only error assigned necessary to consider is that relating to remarks of counsel for plaintiff dur-

ing his address to the jury.  Because their prejudicial effect is made more apparent when viewed in their entirety they have been quoted in the foregoing statement at some length.

Besides the impropriety of some of them, two things were manifest in the course of the trial,—that there was unrestrained departure from the lines of proper argument and comment, and laxity in enforcing recognized rules of procedure.  But for the latter the former would rarely occur and occasions for review would be lessened.  But if the presiding judge neglects his duty to guide the trial and exercise the power to prevent abuse of argument and improper comment before the jury, it cannot be expected that the judgment will pass review.  And if counsel will not take warning from the numerous decisions on this subject to refrain from transgressing the well-known limitations a fair trial and dispassionate consideration of the evidence prescribe, they must attribute the loss of benefits to their excess of zeal or indiscretion and not to a disposition of reviewing courts lightly to disturb the verdict of a jury.  It is as essential to the attainment of justice as to the dignity of the court that abuses of this sort should not be tolerated.

To be specific.  On several occasions when defendant's counsel sought a ruling on his objections he was compelled, apparently without assistance of the court, to dissuade plaintiff's counsel from pressing the argument objected to before a ruling could be obtained. The exercise of the undoubted right to demand a ruling on objections was not only repeatedly interfered with by continuing the line of argument without giving opportunity for a prompt ruling, but freely characterized, without rebuke or admonition of the court, as purposely intended ''to break up'' counsel's argument.  To emphasize it, he declared that he ''expected it,'' and knew opposing counsel would try ''to break him up,'' and instead of appealing to the court if he

needed protection, invited the jury's consideration of his disadvantage in being "interrupted and bully-ragged every minute." Remarks of this kind were improper even when the rulings were in his favor. But when against him they took the form of appealing from judge to jury of the impropriety not only of counsel's "interruptions" but of the rulings of the court. When the court sustained objection to the remark as to his client's matrimonial prospects, he said to the jury, "what is the use of our beating around the bush?" When objection was sustained to "staking his opinion and reputation" as to what the damages should be, he said: "Gentlemen, I see that I can not make much of a talk here to-day, but I don't care what it is, you can judge between us both. * * * I have told you what I believe this amount ought to be and I ask you to give it."

Again, when improper remarks were objected to they were withdrawn frequently with the remark that it was done "to save time" and without a ruling of the court, thus leaving the jury to consider both their propriety and the necessity of counsel's suggested sacrifice.

We cannot believe that such procedure was without prejudice to defendant, and its extent cannot be measured. It was calculated to warp the jury's judgment as to the evidence as well as the amount of the verdict. A remittitur would not cure the error even if we were disposed to regard the amount of the verdict as excessive. It was at least large.

It was the duty of the court to pass on objections when made that the jury might be guided by its rulings, and it was the duty of counsel to stop his argument until the ruling was made. It was the court's duty not only to require him to cease, but not to permit his reflections on the exercise of the legal right to interpose objections. It was for the court to pass upon the grounds and not for the jury on the motives

of objections.  Being unacquainted with technical procedure or the necessities therefor, the jury should not have been left by absence of the proper conduct and guidance of the trial to infer that the objections were resorted to as a mere device to interrupt counsel's argument and consume his time.  We would not reverse for occasional infractions of this kind, but when they are so numerous as to show a clear disregard of the settled course of procedure designed to insure a fair hearing and protect parties to a trial from injustice, we are constrained to reverse the judgment even though it might otherwise stand.  The responsibility of the result is not with us, but that of upholding the guaranties surrounding a fair trial is.

But if the unwarranted obtrusion of counsel's individual opinion as to the amount of damages, the argument that the basis of the verdict should be an amount sufficient to produce an income that would support the minor the rest of her life, the reference to her "humble circumstances," the allusion to her going down "into the valley of the shadow of death" while under the anesthetic, and the discussion of mental pain and spoiled matrimonial prospects, would not separately call for a reversal of the judgment, when taken together in connection with the course of procedure above alluded to, they undoubtedly would.

*Reversed and remanded.*